### UNITED STATES of America, Plaintiff–Appellee,

v.

### Guido RIASCOS–SUAREZ a/k/a Kennedy Diuza–Riascos, Defendant–Appellant.

No. 95–5035.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1995.

Decided Jan. 12, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied March 13, 1996.

Terry M. Cushing (argued and briefed), Mark L. Miller, Asst. U.S. Attys., Louisville, KY, for plaintiff-appellee.

Thomas H. Atkins (argued and briefed), Atkins & Atkins, Louisville, KY, for defendant-appellant.

Before: MERRITT, Chief Judge; DAUGHTREY and OAKES,* Circuit Judges.

OAKES, Circuit Judge.

Appellant Guido Riascos–Suarez pleaded guilty to one count each of possession with intent to distribute cocaine, conspiracy to possess with intent to distribute cocaine, unlawful entry into the United States by a deported alien, and possession of a firearm by an illegal alien. Riascos–Suarez also entered an *Alford* plea on one count of use of a firearm during a drug trafficking crime. He was sentenced by Judge John G. Heyburn, Western District of Kentucky, to a total of 168 months' imprisonment.

Riascos–Suarez appeals on several grounds. First, he claims the district court erred in denying his motion to withdraw his guilty plea. Second, he asserts that the court erred in accepting his *Alford* plea. Third, he claims that the court erred in denying his motion to suppress evidence. Fourth, he claims that the court erred in denying him the opportunity to cross-examine a co-defendant once that codefendant exercised her Fifth Amendment right against self-incrimination. Fifth, he claims the court erred when it failed to follow Federal Rules of Criminal Procedure Rule 32(c)(3)(C) by denying the defendant his right to address the court during sentencing.

We agree with the appellant's fifth contention and we hold that the district court erred in denying Riascos–Suarez his right to address the court during sentencing. Therefore, we vacate the sentence and remand for a new sentencing hearing. We affirm the district court on all of Riascos-Suarez's remaining claims.

## BACKGROUND

In May 1993, a Louisville police detective observed Riascos–Suarez driving a Nissan

---

* The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

automobile at a speed of approximately 100 miles per hour. The police detective activated the squad car's lights and sirens, indicating that Riascos–Suarez should pull over. After about a mile and a half, during which period the detective observed "lots of movement" in the Nissan, Riascos–Suarez pulled over.

The police detective, wary of the movement he had observed in the car, approached with his gun drawn. He asked Riascos–Suarez to identify himself. Riascos–Suarez responded that his name was Kennedy Riascos Diuza and produced identification with this alias.[1] He stated that he did not own the Nissan. He said he was traveling to Ohio to purchase jewelry for someone in Houston, and had stopped in Louisville to see his girlfriend.

As the detective stood outside of the car and questioned Riascos–Suarez, he noticed bundles of money scattered throughout the Nissan's interior. The detective then asked Riascos–Suarez to exit the vehicle. As Riascos–Suarez exited, the detective saw a handgun protruding from the driver's side of the console.

The detective placed Riascos–Suarez under arrest for speeding and carrying a concealed deadly weapon. After reading the *Miranda* rights to Riascos–Suarez, the detective asked him a series of questions, including whether he had "any problem" with the detective searching the Nissan. Riascos–Suarez responded by saying, "Go ahead, there's no dope in the car."

A search of the Nissan yielded a loaded .380 Baretta semi-automatic handgun, additional ammunition, approximately $20,000 in cash, a plastic grocery sack containing a clear cellophane bag wrapped in silver duct tape, a piece of Holiday Inn stationery inscribed with "Azziz Kahn" and "room 110," and several of Riascos-Suarez's business documents written in English. The clear cellophane bag smelled of garlic and was dusted with a fine white powder, later identified as cocaine.

Police detectives traveled to the Holiday Inn nearest the scene of the arrest and located Azziz Kahn. Kahn stated that he had hoped to "hook up" with Riascos–Suarez for a drink later. He also informed the police that Riascos-Suarez was staying at the hotel with a Jamaican woman. The hotel manager gave the police similar information. The police located the woman, named Cherry Coleman, in the hotel bar. Coleman admitted to knowing Riascos-Suarez. One detective asked Coleman whether she would permit the officers to ask her a few questions in her hotel room. Coleman agreed, and two detectives went into the room with her while one remained outside. The detectives read Coleman her *Miranda* rights and told her that she was free to leave at any time.

The detectives asked for and obtained written consent to search Coleman's hotel room. During the search of the room, the police found a bag containing approximately $11,000 in cash; a zippered gym bag containing a receipt for an electronic scale, a receipt for dry cleaning for "Kennedy Diuza," and plastic baggies; men's clothing and a laundry bag marked "room 341"; and approximately 700 grams of cocaine.

After return of a five-count Superseding Indictment in August 1993, Coleman filed a motion to suppress the evidence seized from the hotel room, and Riascos–Suarez filed a motion to suppress the evidence seized from the Nissan. During the suppression hearing, Coleman began to testify in support of her motion, but invoked her Fifth Amendment right and withdrew her suppression motion after the Government started cross-examination. Riascos–Suarez objected and asked to be permitted to cross-examine Coleman. The court, discrediting Coleman's testimony, refused to allow Riascos–Suarez to cross-examine Coleman and denied Riascos–Suarez's suppression motion.

In June 1994, Riascos–Suarez pleaded guilty to four of the five counts and entered an *Alford* plea on the remaining count of using a firearm during a drug trafficking

---

1. Police investigation revealed that "Kennedy Diuza" was in fact Guido Riascos-Suarez, who had been deported from the United States by the INS in June 1987.

crime.[2] During the plea colloquy, an interpreter was on hand to translate any part of the proceedings that Riascos–Suarez indicated he did not understand.

Approximately three months after pleading guilty, Riascos–Suarez filed a pro se motion to withdraw the guilty plea. Simultaneously, defense counsel asked the court permission to end his representation of Riascos–Suarez. The court granted counsel's request and new counsel was appointed. The guilty plea withdrawal motion was renewed and denied by the court. Riascos–Suarez was then sentenced to 108 months concurrently on four counts and 60 months consecutively on the *Alford* plea count, for a total sentence of 168 months.

## DISCUSSION

I. Withdrawal of Guilty Plea

 Riascos–Suarez claims the district court erred in denying his motion to withdraw his guilty plea to four of the five counts in the indictment. We review the district court's decision for abuse of discretion. *United States v. Stephens,* 906 F.2d 251, 252 (6th Cir.1990).

 Federal Rules of Criminal Procedure Rule 32(e) (formerly Rule 32(d)) states "[i]f a motion to withdraw a plea of guilty ... is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Under the rule, then, the defendant bears the burden of showing that the plea should be withdrawn. *Stephens,* 906 F.2d at 252.

The district court should evaluate whether a defendant has proffered a "fair and just reason" for withdrawing the plea by considering:

(1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted. *United States v. Goldberg,* 862 F.2d 101, 103–04 (6th Cir.1988); *see also United States v. Spencer,* 836 F.2d 236, 238–40 (6th Cir.1987).

We find that the district court did not err in applying these criteria. With regard to the first factor for Rule 32(e) decisions, Riascos–Suarez did not "consistently maintain his innocence" to these four charges or offer any defenses. In weighing the second, third and fifth factors, the court did not penalize Riascos–Suarez for the delay in filing his motion caused by change of counsel or for prejudice to the government, because it found that Riascos–Suarez could not meet his burden under the fourth factor.

Riascos–Suarez argued, regarding the fourth factor, that due to his inability to understand English and unfamiliarity with the American judicial system, he could not appreciate the nature of the plea process. The district court did not agree, finding that nothing in the record indicated that a lack of comprehension affected the plea.

At the change of plea hearing, the court took pains to ensure that Riascos–Suarez understood the proceedings. An interpreter was present. The court specifically told Riascos–Suarez that the interpreter could translate every word of the proceeding should Riascos–Suarez so desire. The following exchange took place:

THE COURT: Now, so far I have noticed that you are not making any translations, is that because he understands?

BY INTERPRETER: I believe so, Your Honor. He indicated to me just to interpret whenever he doesn't understand....

THE COURT: I want to make it clear that it is at the defendant's request that you are not translating every word.... [W]e will proceed in English with translation from the translator where necessary and where requested by the defendant, all right?

BY DEFENDANT: (Nodding affirmatively).

---

**2.** In an *Alford* plea, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), a defendant recognizes that the Government has enough evidence to convict him or her of the charge but does not actually admit guilt.

Following this exchange, the district court apprised Riascos–Suarez of his constitutional rights:

THE COURT: Now, I am going to ask you a number of questions about your rights. Do you know you have certain constitutional rights in this court, such as the right to a jury trial?

BY DEFENDANT: Yes.

. . .

THE COURT: Now, do you understand that you, if you went to trial you would be presumed innocent, that the government would have to prove your guilt beyond a reasonable doubt if you went to trial?

BY DEFENDANT: Yeah, I understand that.

THE COURT: And that from the beginning of the trial you would be presumed innocent until the jury would deliberate, is that right?

BY DEFENDANT: Yes.

The change of plea hearing, in conjunction with other evidence of Riascos–Suarez's knowledge of English, such as his business documents written in English that the police seized from the Nissan, supports the district court's decision that Riascos–Suarez's ability to understand English did not provide a "fair and just reason" for withdrawing the guilty plea.

## II. Acceptance of § 924(c)(1) *Alford* Plea

 Riascos–Suarez pleaded guilty pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), on the count of using or carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). In *Alford,* the Supreme Court held that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37, 91 S.Ct. at 167. Before accepting an *Alford* plea, a court must find a proper factual basis pursuant to Federal Rules of Criminal Procedure Rule 11(f). The trial court enjoys broad discretion in determining whether the Gov-

ernment can provide a factual basis. *United States v. Morrow,* 914 F.2d 608, 611 (4th Cir.1990); *United States v. Pinto,* 838 F.2d 1566, 1569 (11th Cir.1988) (per curiam). Here, Riascos–Suarez claims that the court erred in accepting his *Alford* plea because a factual basis for the plea was lacking. We disagree.

Section 924(c)(1) reads "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years. . . ." Therefore, under section 924(c)(1), the United States must prove that the defendant: (1) carried or used a firearm; (2) during and in relation to a drug trafficking crime.

In this case, the facts proffered by the Government are that Riascos–Suarez drove a car containing approximately $20,000 in cash, plastic bags covered with cocaine residue, and a loaded .380 Baretta pistol. He possessed the key to the Holiday Inn hotel room where 700 grams of cocaine and more cash were discovered.

Regarding the first element of the Government's proof, this court has in the past given a broad interpretation to the language "uses or carries a firearm." We have held that a defendant need not hold, brandish, or fire a weapon in order to be convicted under this section. *United States v. Sims,* 975 F.2d 1225, 1240 (6th Cir.1992), *cert. denied,* 507 U.S. 998, 113 S.Ct. 1617, 123 L.Ed.2d 177 (1993); *United States v. Acosta–Cazares,* 878 F.2d 945, 951 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). Rather, we said, a gun stored in close proximity to the defendant, so that the weapon is either readily available for use or emboldens a defendant, is sufficient to constitute "using or carrying" a firearm. *See United States v. Christian,* 942 F.2d 363, 368 (6th Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1045, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992); *United States v. Brown,* 915 F.2d 219, 224 (6th Cir.1990).

A recent Supreme Court opinion, however, requires us to reexamine our position regarding section 924(c)(1) convictions. In *Bailey v. United States,* —— U.S. ——, 116 S.Ct.

501, 133 L.Ed.2d 472 (1995), the Court addressed "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for "use" of a firearm during and in relation to a drug trafficking offense...." *Id.*, at ——, 116 S.Ct. at 503. In *Bailey*, a consolidated case involving two separate challenges to section 924 convictions, the weapons at issue were located in a locked car trunk, in one case, and in a locked footlocker inside a closet in the other. The Court held that "section 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.*, at ——, 116 S.Ct. at 505. Noting that the statute provides two alternate bases for a section 924(c)(1) conviction—"uses or carries"—the Court found that if "use" were understood to encompass "the action of a defendant who puts a gun into place to protect drugs or to embolden himself," the term would be "of such breadth that no role [would] remain[ ] for 'carry'." *Id.*, at ——, 116 S.Ct. at 507. The Court remanded for a consideration of whether the placement of the guns in a locked car trunk and in a locked footlocker inside a closet constitutes "carrying" for purposes of section 924(c)(1).

Under *Bailey*, Riascos–Suarez cannot be convicted of "using" the firearm. He was not actively employing the gun and, as the Court noted, "[p]lacement [of a gun] for later active use does not constitute 'use'." *Id.*, at ——, 116 S.Ct. at 509. The question then is whether Riascos–Suarez can be convicted under section 924(c)(1) for "carrying" the Baretta. As the Supreme Court found, "[t]he 'carry' prong of section 924(c)(1) ... brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.*

■ Though the holding of the *Bailey* case is limited to the proposition that in order to be convicted under section 924(c)(1) for using a gun a defendant must "actively employ" a firearm, *id.*, the case provides some guidance regarding the correct application of the "carry" prong of section 924(c)(1). In distinguishing "use" from "carry," the Court commented that "[i]f Congress had intended to deprive 'use' of its active connotations, it could have simply substituted a more appropriate term—'possession'—to cover the conduct it wished to reach." *Id.*, at ——, 116 S.Ct. at 508. The Court went on to say, "[a] defendant cannot be charged under section 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession." *Id.* Since neither storage nor possession of a gun is, without more, prohibited by section 924(c)(1), to be convicted under section 924(c)(1) of "carrying" a weapon, a defendant must do more than possess or store a weapon.

■ We find that in order for a defendant to be convicted of carrying a gun in violation of section 924(c)(1), the firearm must be immediately available for use—on the defendant or within his or her reach. Such availability takes the weapon beyond simple possession or storage. Here, the detective testified that the gun was visibly placed in the driver's side of the console and not, as in *Bailey*, locked in a trunk or in a footlocker located in a closet. Under these facts, we hold that Riascos–Suarez carried the weapon for purposes of section 924(c)(1) because the firearm was within reach and immediately available for use.

Regarding the second element, the Supreme Court has stated that in order to show that a firearm has been used or carried "in relation to" a drug trafficking offense, the Government must prove that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence. *Smith v. United States*, 508 U.S. 223, —— ——, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993); *see also Brown*, 915 F.2d at 224. The drug trafficking crimes at issue here are conspiracy and possession with intent to distribute cocaine.

In this case, the firearm was not carried "in relation to" possession of cocaine, since no drugs were found in the car with the weapon. The issue is whether the gun was carried "in relation to" the conspiracy crime. As with the words "use" and "carry," there

has been some controversy regarding the interpretation of "in relation to": when does a firearm further the purpose of a crime?

In *United States v. Edwards,* 994 F.2d 417 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 701, 126 L.Ed.2d 667 (1994), the defendant was convicted of conspiracy to distribute cocaine and of using a firearm in connection with the conspiracy in violation of section 924(c)(1). The firearms at issue had been seized from the defendant's home, where large amounts of cash, but no drugs, were also recovered. Even though there was no evidence that drug transactions occurred at the defendant's home or that he stored drugs there, the court held that, "[p]rotection of drug proceeds furthers a drug trafficking crime, and use of a firearm to guard such proceeds therefore violates section 924(c)." *Id.* at 421; *see also United States v. Reyes,* 930 F.2d 310, 313–14 (3d Cir.1991) (finding that a gun located in a car trunk in close proximity to $9,020 cash was used or carried in furtherance of the conspiracy to distribute cocaine).

Similar to *Edwards,* in *United States v. Sims,* 975 F.2d at 1231, the defendant was convicted of conspiracy to possess cocaine with intent to distribute and using or carrying a firearm in violation of section 924(c). The defendant admitted to carrying a concealed loaded shotgun to the scene of a drug transaction where he and his cohorts were to buy 15 kilograms of cocaine for $350,000. *Id.* This court found that, under these facts, the defendant carried the shotgun for the purposes of section 924(c) and "was present at the transaction to protect the money, which was integral to the drug deal." *Id.* at 1240.

In contrast, in *United States v. Clemis,* 11 F.3d 597, 600 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1858, 128 L.Ed.2d 481 (1994), a defendant was convicted of conspiracy to distribute, distribution of cocaine, and use of a firearm in violation of section 924(c)(1). This court found that the section 924 conviction must be overturned since "the firearms were not found in the same room, or even in the same house as any drugs or drug paraphernalia." *Id.* at 602. This court rejected the Government's contention that the proximity of the weapons to drug money

established that the weapons "facilitat[ed] the drug transaction." *Id.* We noted that there was no evidence that any drug transaction occurred in the house where the weapons were located and "there was absolutely no evidence that Clemis carried a weapon during the transactions in question...." *Id.* Absent such evidence, this court stated that a section 924(c)(1) conviction cannot be sustained because "mere possession of a weapon during the course of criminal conduct is not enough." *Id.*

The case before us is similar to *Edwards, Reyes,* and *Sims.* Here, Riascos–Suarez drove a car containing a large amount of cash, empty bags covered with cocaine residue, and a loaded weapon near the driver's seat. He possessed the key to a hotel room containing several hundred grams of cocaine. It is reasonable to conclude that he was en route to or from the hotel room when arrested, especially given Kahn's testimony that he and Riascos–Suarez were to "hook up" later. These facts distinguish the case before us from *Clemis,* where money and weapons happened to be in the drug dealer's residence, a place where he apparently did not conduct business. The facts offered by the Government against Riascos–Suarez are sufficient to find that he carried the gun in order to further the conspiracy to possess cocaine.

Because the evidence supports a conviction for using or carrying a firearm during or in relation to the drug trafficking crime of conspiracy to possess with intent to distribute cocaine, the court correctly accepted Riascos–Suarez's *Alford* plea to the section 924(c)(1) count.

## III. Evidence Suppression

■ Riascos–Suarez claims the court erred when it refused to suppress the evidence seized from the Nissan since he did not consent to the search and the search was not supported by probable cause. We review the court's factual findings supporting denial of a motion to suppress for clear error, but review the court's legal determinations *de novo. United States v. Baro,* 15 F.3d 563, 566 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 285, 130 L.Ed.2d 201 (1994); *see also United States v. Calhoun,* 49 F.3d

231, 234 (6th Cir.1995). Because there are a variety of reasons to uphold the search, we affirm.

### A. Consent

■ A search may be conducted without a warrant if a person with a privacy interest in the item to be searched gives free and voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 222, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *United States v. Kelly,* 913 F.2d 261, 265 (6th Cir. 1990). A court will determine whether consent is free and voluntary by examining the totality of the circumstances. *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047. It is the Government's burden, by a preponderance of the evidence, to show through "clear and positive testimony" that valid consent was obtained. *United States v. Scott,* 578 F.2d 1186, 1188 (6th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978); *see also Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968); *Baro,* 15 F.3d at 566. Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police. *United States v. Jones,* 846 F.2d 358, 360 (6th Cir.1988) (citing *Schneckloth,* 412 U.S. at 226, 248, 93 S.Ct. at 2047).

■ Here, Riascos–Suarez claims that he could not understand English well enough to give voluntary consent to a search. At the suppression hearing, Riascos–Suarez testified that his English was poor at the time of the search and that he never gave the officer permission to search the Nissan. The facts overwhelmingly refute Riascos–Suarez's claim. Riascos–Suarez had no difficulty responding in English to questions posed at the scene of the arrest and did not indicate that he did not understand the detective's inquiries. Riascos–Suarez provided the police with a detailed alibi that the money was for a large jewelry purchase. When asked for permission to search his vehicle, Riascos–

Suarez responded, "Go ahead, you won't find any dope in the car." Additionally, there is no evidence of coercion, and it appears that Riascos–Suarez was cooperative.

Given these facts, the court's determination that Riascos–Suarez's validly consented to the search of the Nissan was not clear error. *See United States v. Bueno,* 21 F.3d 120, 127 (6th Cir.1994).

Even if we were to find that Riascos–Suarez did not validly consent to the search, the search of the Nissan was valid under either the plain view or the search incident to a lawful arrest exception.

### B. Plain View

■ A search and seizure is valid if an officer sees an incriminating object while lawfully standing in an area from which the object is plainly visible. *United States v. Blakeney,* 942 F.2d 1001, 1028 (6th Cir.1991), *cert. denied,* 502 U.S. 1035, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 464–69, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971)). Here, the officer lawfully stopped Riascos–Suarez for driving approximately 100 miles per hour on a highway. While standing next to the driver-side window, the officer observed bundles of cash strewn about the inside of the vehicle. Then, in arresting Riascos–Suarez, the officer saw a weapon protruding from the driver-side console. Because these incriminating items were in plain view, the officer's subsequent seizure of them was valid.

### C. Arrest

■ When an officer arrests a person based upon probable cause, the officer may search the person and any area within "immediate control" of the person. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). When the person is arrested in an automobile, the officer may permissibly search the passenger compartment of the automobile and the contents of any containers in the compartment. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. White,* 871 F.2d 41, 44 (6th Cir.1989) (noting that a search will be valid

even if conducted after the arrestee exits the vehicle). Here, the detective had probable cause to arrest Riascos–Suarez, whom he had observed speeding. Since Riascos–Suarez was validly arrested, the search of the passenger compartment of the Nissan was permissible.[3]

### IV. Cross–Examination of Co–Defendant

■ Riascos–Suarez claims the court erred in refusing to allow him to cross-examine Cherry Coleman after she had taken the stand and answered a few questions in support of her motion to suppress the hotel room evidence, but then withdrew the motion and invoked her Fifth Amendment right against self-incrimination. We review the district court's determination for abuse of discretion and, finding none, we affirm. *See United States v. Pritchett,* 699 F.2d 317, 321 (6th Cir.1983).

At a pretrial hearing on her motion to suppress evidence seized from the Holiday Inn hotel room, Coleman took the stand and began to testify. During cross-examination by the Government, Coleman invoked the Fifth Amendment and subsequently withdrew her motion to suppress. Riascos–Suarez asked to cross-examine Coleman about her consent and the items found in the room. The court denied Riascos–Suarez's request, stating that Riascos–Suarez had no standing with regard to Coleman's consent to search the hotel room. The court then struck Coleman's testimony in its entirety and indicated that it did not credit the testimony in any way.

■ It is true, as Riascos–Suarez asserts, that "[b]ecause of the historical and practical importance of the right of cross-examination, any limitations on this right . . .

must be justified by weighty considerations." *United States v. Green,* 670 F.2d 1148, 1154 (D.C.Cir.1981). It is equally well-settled, as the Government notes, that "the defendant's right to discredit a prosecution witness on cross-examination cannot overcome the witness' privilege against self-incrimination, if properly asserted." *United States v. Gullett,* 713 F.2d 1203, 1208 (6th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984). Neither party, however, has focused their argument on the correct issue: whether Riascos–Suarez had any right to cross-examine Coleman at all.

■ In denying Riascos–Suarez the opportunity to cross-examine Coleman, the court reasoned that, since Coleman had withdrawn her motion to suppress, any further testimony by her on cross-examination would be irrelevant. The court's reasoning is correct. The court did not deny Riascos–Suarez the right to cross-examine Coleman; since Riascos–Suarez had no basis for properly examining her, he had no right to assert. Coleman had testified only as to whether or not she validly consented to a search of the hotel room and, although Riascos–Suarez would have liked the hotel room evidence suppressed, the issue of whether Coleman consented was hers to pursue or drop.[4] The Sixth Amendment only guarantees a defendant the right to confront "witnesses against him," and Coleman was not "against" Riascos–Suarez.

This is not a case where the court denied a defendant an opportunity to question a key witness about matters directly incriminating the defendant. *See, e.g., Stevens v. Bordenkircher,* 746 F.2d 342 (6th Cir.1984); *Fountain v. United States,* 384 F.2d 624 (5th Cir.1967), *cert. denied,* 390 U.S. 1005, 88

---

3. Riascos-Suarez also claims the hotel room items should have been suppressed but his argument cannot be sustained. As our discussion indicates, the hotel room search did not occur as a result of any illegal search of the Nissan. In any case, Coleman consented to a search of the room. Riascos–Suarez does not have standing to challenge Coleman's consent. Though he possessed a key to the hotel room, the room was not rented to him and, in fact, he had checked out of the hotel earlier in the day. It therefore cannot be said that Riascos–Suarez enjoyed a "legitimate expectation of privacy" in the hotel room at

the time of the search. *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *see United States v. McNeal,* 955 F.2d 1067, 1073–75 (6th Cir.), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3039, 120 L.Ed.2d 908 (1992); *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1510 (6th Cir.1988).

4. As stated above, *supra* n. 3, Riascos–Suarez does not have standing independently to challenge Coleman's consent.

S.Ct. 1246, 20 L.Ed.2d 105 (1968). The court's remedy of striking all of Coleman's testimony was more than adequate to ensure Riascos–Suarez was not prejudiced. *See United States v. Stephens,* 492 F.2d 1367, 1374–75 (6th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 93, 42 L.Ed.2d 83 (1974).

## V. Allocution

 Riascos–Suarez claims that the court erred when it failed to address him personally prior to imposing a sentence as required by Federal Rules of Criminal Procedure Rule 32(c)(3)(C). Rule 32(c)(3)(C) states that before imposing sentence, a court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." A trial court's failure to follow Rule 32's mandate constitutes reversible error. *See United States v. De Alba Pagan,* 33 F.3d 125, 129–30 (1st Cir.1994); *United States v. Sparrow,* 673 F.2d 862, 865 (5th Cir.1982).

 As the Supreme Court has recognized, Rule 32(c)(3)(C) grew out of the well-entrenched common law right of allocution. *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). Allocution, a defendant's right to speak in his or her behalf before pronouncement of sentence, is not an empty formality. A defendant has the right to address the sentencing court and demonstrate why he or she deserves a lesser penalty than the court would otherwise be inclined to impose. As one court noted, allocution "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *De Alba Pagan,* 33 F.3d at 129.

 We have held that in order to fulfill Rule 32's requirements, "the district court judge must personally and unambiguously invite the defendant to speak in his own behalf." *United States v. Thomas,* 875 F.2d 559, 563 (6th Cir.), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989). It is insufficient to give defense counsel, rather than the defendant, an opportunity to speak because "[t]he most persuasive counsel may not be able to speak for a defendant as

the defendant might, with halting eloquence, speak for himself." *Green,* 365 U.S. at 304, 81 S.Ct. at 655.

The colloquy between the court and Riascos–Suarez in this case did not approach the standard mandated by Rule 32. In fact, the court never addressed the defendant at all. *Compare Thomas,* 875 F.2d at 561, 563 (finding that court's statement to defendant that "[e]ither you or [defense counsel] can address the court on your behalf" met the minimum standard of Rule 32). In light of the court's failure to address the defendant, we find that Riascos–Suarez's was denied his Rule 32 right of allocution.

We must therefore fashion an appropriate remedy. Riascos–Suarez was sentenced to a total of 168 months, based upon a criminal history category of II and an offense level of 28. The judge granted a two-level decrease for acceptance of responsibility, U.S.S.G. § 3E1.1, but denied an additional one-level decrease for timely notification of intent to enter a guilty plea under the same Guidelines section. The court also imposed upward adjustments for role in the offense, U.S.S.G. § 3B1.1, and obstruction of justice, U.S.S.G. § 3C1.1. Thus, Riascos–Suarez did not receive the "shortest sentence allowed by statute." *United States v. Cole,* 27 F.3d 996, 999 (4th Cir.1994); *compare United States v. Lewis,* 10 F.3d 1086, 1092 (4th Cir.1993) (finding no prejudicial error when defendant was denied allocution but sentenced to the Guidelines minimum); *United States v. Mejia,* 953 F.2d 461, 468 (9th Cir.1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992) (finding that it is not error to deny allocution when sentence imposed is lowest possible).

Riascos–Suarez's allocution could have had an effect on his sentence. Therefore, his sentence must be vacated and the case remanded for a new sentencing hearing. The new hearing must not be a hollow exercise in which Riascos–Suarez's is given a chance to speak but the same sentence is perfunctorily applied. Failing to grant a defendant the right of allocution infects the entire sentencing process. In order to ensure a meaningful exercise of Riascos–Suarez's right of allocution, he must be placed "in the same

position as if he had never been sentenced." *United States v. Maldonado,* 996 F.2d 598, 599 (2d Cir.1993) (per curiam).[5]

Riascos–Suarez claims that, in addition to a new hearing, he is entitled to renew the motions to withdraw his guilty pleas due to the denial of his right to allocution. Relying upon *United States v. Axelrod,* 48 F.3d 72 (2d Cir.1995) (per curiam), Riascos–Suarez asserts that because the sentencing hearing must be conducted anew, he should be able to renew motions made prior to sentencing as well.

■ *Axelrod,* however, does not support Riascos–Suarez's claim. In *Axelrod,* the court reaffirmed the notion that, when denied allocution, a defendant should be placed "in the same position as if he had never been sentenced." *Id.* at 73 (citing *Maldonado,* 996 F.2d at 599). However, the court simultaneously issued an unpublished summary order disposing of many other defense claims regarding jury instructions, discovery, and evidence admission. Thus, while *Axelrod* states that a defendant denied allocution should be "placed in the same position as if he had never been sentenced," *id.,* the court apparently meant that this clean slate should apply to the sentencing process only, and not to any other claims of the defendant unaffected by the denial of allocution. *See De Alba Pagan,* 33 F.3d at 127 (remanding for resentencing due to denial of allocution, but affirming the district court's decision to deny defendant's motion to withdraw his guilty plea); *United States v. Tuchow,* 768 F.2d 855 (7th Cir.1985) (remanding for resentencing due to denial of allocution but affirming evidentiary and jury instruction decisions). We therefore find that Riascos–Suarez may not renew his motion to withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, we vacate the sentence and remand for a new sentencing hearing. In all other respects, we affirm.

**5.** We therefore do not need to decide Riascos–Suarez's claims that the court failed to apply correctly the Guidelines with respect to acceptance of responsibility, role in the offense, and obstruction of justice.