103 F.3d 131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sean DEVEAUX and Damon Deveaux, Defendants-Appellants.
 Nos. 95-3899, 95-3926.
 United States Court of Appeals, Sixth Circuit.
 Nov. 25, 1996.
 
 Before: JONES, RYAN, and MOORE, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Sean Deveaux appeals from the judgment entered following his guilty plea to one count of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846, and one count of using or carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).
 
 
 2
 Damon Deveaux appeals from the judgment entered following a jury verdict of guilty on one count of conspiracy to possess heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and one count of using or carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).
 
 
 3
 In challenging only their convictions under 18 U.S.C. § 924(c), the defendants' appeals implicate the Supreme Court's recent decision in Bailey v. United States, 116 S.Ct. 501 (1995), in which the Court held that a defendant has not been shown to have "use[d] ... a firearm" within the meaning of section 924(c) when the government merely produces "evidence of the proximity and accessibility of a firearm to drugs or drug proceeds." Id. at 503. For the reasons that follow, we vacate the judgments with respect to the convictions under 18 U.S.C. § 924(c).
 
 I.
 
 4
 In the winter of 1995, the Deveaux brothers were being investigated for suspected heroin trafficking at a two-story residence in Columbus, Ohio. Apparently living in the residence were Damon Deveaux and another man. Sean Deveaux had recently arrived from New York City for a visit.
 
 
 5
 In late January 1995, a confidential informant made a controlled buy of .4 grams of heroin from Sean Deveaux and another man. Columbus police officers, in cooperation with agents of the Federal Bureau of Alcohol, Tobacco and Firearms, then performed surveillance of the residence, and observed, over a two- or three-hour period, approximately 20 people enter the house, stay for a minute or two, and then return to their cars. The next day, a confidential informant made another controlled buy at the residence, this time of .2 grams of heroin.
 
 
 6
 A search warrant was executed at the premises on the following day, at which time both defendants were present. Damon Deveaux was sitting on the living room couch, in which was found 1.9 grams of heroin. Another man was found in a "middle room" of the house, while Sean Deveaux was found walking from the kitchen into that middle room. Six firearms were found in various locations throughout the house. An H & R .32 revolver, unloaded, was found in a milk crate in the basement. A Lorcin .380 pistol, loaded, was recovered from a milk crate in the basement. A Bryco .380 pistol, loaded, was found in a dresser drawer in an upstairs bedroom. A Norinco 9mm pistol, loaded, was found in a dresser drawer in an upstairs bedroom. A Smith and Wesson .357 revolver, unloaded, was discovered in the kitchen in a bag of salt. Finally, a Winchester 12-gauge sawed-off shotgun, loaded, was recovered from a closet in an upstairs bedroom. None of the law enforcement officials who testified at trial said that they had ever seen either of the defendants with a firearm during the surveillance period.
 
 
 7
 The defendants were named in a multicount indictment charging both with one count of conspiring between January 1 and February 2, 1995, to possess heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (count 1); one count of possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count 2); one count of using or carrying one or more firearms during and in relation to the commission of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (count 3); and charging Sean Deveaux only with one count of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) (count 4).
 
 
 8
 After initially pleading not guilty to all counts, Sean Deveaux changed his plea to guilty to counts 1 and 3 of the indictment, pursuant to a written plea agreement in which the government dismissed counts 2 and 4. The factual basis for Sean Deaveaux's guilty plea was premised largely on the testimony of an ATF agent. With regard to the section 924(c) conviction, the agent related the following:
 
 
 9
 [ATF AGENT]: Recovered during the search warrant were 92 packets of heroin, $1,890 in cash, and six firearms located throughout the residence, four of which were loaded.
 
 
 10
 Sean Deveaux, Damon Deveaux and Kenneth Marshall were all present in that residence at the time of the search warrant....
 
 
 11
 THE COURT: How about Count 3, the gun count?
 
 
 12
 [ATF AGENT]: The gun count, Your Honor?
 
 
 13
 THE COURT: Yes.
 
 
 14
 [ATF AGENT]: As I stated before, there were six firearms located throughout the residence at the time.
 
 
 15
 THE COURT: Okay.
 
 
 16
 Sean Deveaux then affirmed that the agent had given "a correct statement of the facts," but no other information about the guns was elicited. Meanwhile, Damon Deveaux proceeded to trial, and was convicted on all counts.
 
 
 17
 The district court sentenced Sean Deveaux to 70 months of imprisonment, 60 of which were attributable to the mandatory minimum attaching to the section 924(c) conviction. Damon Deveaux was sentenced to 90 months of confinement, 60 of which were attributable to the section 924(c) conviction.
 
 
 18
 From their judgments of conviction, the defendants filed these timely appeals.
 
 II.
 
 19
 The statute at issue here provides, in relevant part, as follows:
 
 
 20
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 21
 18 U.S.C. § 924(c). The Supreme Court's decision last year in Bailey v. United States, 116 S.Ct. 501 (1995), radically reconfigured the section 924(c) landscape. The Court "granted certiorari to clarify the meaning of 'use,' " id. at 505, and in so doing, significantly narrowed the concept from that which had been employed in the lower courts, holding that section "924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense," id. The Court explicitly rejected a "proximity and accessibility" test:
 
 
 22
 "[U]se" must connote more than mere possession of a firearm by a person who commits a drug offense. Had Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided. This obvious conclusion is supported by the frequent use of the term "possess" in the gun-crime statutes to describe prohibited gun-related conduct.
 
 
 23
 ... [T]he Court of Appeals erred ... in its standard for evaluating whether the involvement of a firearm amounted to something more than mere possession. Its proximity and accessibility standard provides almost no limitation on the kind of possession that would be criminalized; in practice, nearly every possession of a firearm by a person engaged in drug trafficking would satisfy the standard, "thereby eras[ing] the line that the statutes, and the courts, have tried to draw." Rather than requiring actual use, the District of Columbia Circuit would criminalize "simpl[e] possession with a floating intent to use."
 
 
 24
 Id. at 506 (citations omitted). In explaining its requirement that the government show "active employment of the firearm," the Court gave specific examples of the type of activity it had in mind: "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. And the Court also gave a helpful negative example:
 
 
 25
 [T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1). Perhaps the nonactive nature of this asserted "use" is clearer if a synonym is used: storage. A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.
 
 
 26
 Id. (emphasis added).
 
 
 27
 Damon Deveaux argues that the decision in Bailey requires that his conviction be vacated, because the evidence showed only that he possessed a firearm, or stored it near drugs, not that he used it. There is no evidence that he actively employed any of the weapons at any time, let alone during a drug transaction. Damon Deveaux also notes that no loaded weapon was readily available for his use at the time of his arrest; the only weapon on the first floor of the house, where he was arrested, was an unloaded revolver stored in a container of salt. The government's response is confined largely to noting factual "distinctions" between this case and Bailey, such as the observations that Bailey involved only one firearm, and here there were six, and that Bailey involved firearms locked in the trunk of a car or a footlocker, whereas here, the firearms were not locked up. The government also relies heavily on pre-Bailey Sixth Circuit case law, despite a grudging acknowledgment that Bailey "has ... forced" this court "to re-examine its position" on the scope of section 924(c).
 
 
 28
 When reviewing a claim of insufficient evidence, this court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Russell, 76 F.3d 808, 811 (6th Cir.1996), cert. denied, 117 S.Ct. 121 (1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 29
 There can be no serious question that the defendants' convictions cannot stand under Bailey. Bailey made clear that "[a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds," Bailey, 116 S.Ct. at 508, and that "conceal[ing] a gun nearby to be at the ready for an imminent confrontation," id., is also not a violation, and yet the government's position is that precisely those activities here should be the basis for conviction. There is a complete absence of evidence that either defendant actively employed any of the guns in the course of their drug-trafficking activity; they cannot, therefore, properly be convicted of having "used" any of these guns.
 
 
 30
 The government has not explicitly argued that either defendant was properly convicted under the "carry" prong of section 924(c), a statutory basis left unaddressed by the Bailey decision. It is possible that the government intended its reliance on United States v. Riascos-Suarez, 73 F.3d 616 (6th Cir.1996), cert. denied, 117 S.Ct. 136 (1996), to be construed as an implicit argument to this effect. To the extent this is so, we reject that argument as well. In Riascos-Suarez, the defendant was stopped for speeding. Traces of cocaine and a loaded .380 Baretta semi-automatic handgun were found in his car, "protruding from the driver's side of the console." Id. at 620. The court flatly rejected the government's "use" argument, and then concluded that Bailey provided some guidance for an interpretation of the "carry" prong: "Since neither storage nor possession of a gun is, without more, prohibited by section 924(c)(1), to be convicted under section 924(c)(1) of 'carrying' a weapon, a defendant must do more than possess or store a weapon." Id. Therefore, the court concluded, "in order for a defendant to be convicted of carrying a gun in violation of section 924(c)(1), the firearm must be immediately available for use--on the defendant or within his or her reach." Id. Riascos-Suarez was subsequently amplified in United States v. Moore, 76 F.3d 111 (6th Cir.1996), when this court noted that the term "carry" implies movement:
 
 
 31
 A definition of "carry" that takes only availability into account ignores the term's most obvious connotation, i.e., physical transportation. Immediate availability is therefore a necessary, but not sufficient, determinant. Indeed, in Riascos-Suarez we held that "to be convicted under section 924(c)(1) of 'carrying' a weapon, a defendant must do more than possess or store a weapon." The appellant in Riascos-Suarez "carried" the firearm not only because he had it within reach, but also because he physically brought it with him in the course of his drug trade.
 
 
 32
 Id. at 113 (citation and footnote omitted).
 
 
 33
 Neither Riascos-Suarez nor Moore provide any succor to the government here. As required by Riascos-Suarez, none of the guns found in the residence was immediately available for use on either defendant's person or within either defendant's reach; indeed, the government makes no suggestion otherwise. Moreover, there was no evidence at all that the guns were physically transported in the course of the drug trade, as required by Moore.
 
 
 34
 Sean Deveaux offers an alternative basis for the reversal of his conviction, namely, the district court's alleged failure to substantially comply with Fed.R.Crim.P. 11 during the guilty plea hearing, but we find it unnecessary to consider that argument. The mere fact that Sean Deveaux pleaded guilty is not a reason for refusing to address his Bailey argument. When intervening law establishes that the actions of a defendant who has already pleaded guilty no longer constitute a crime, the court may certainly consider on the merits that defendant's challenge to his guilty plea based on the intervening law. Cf. generally United States v. Abdul, 75 F.3d 327 (7th Cir.), cert. denied, 116 S.Ct. 2569 (1996); Riascos-Suarez, 73 F.3d 616.
 
 
 35
 We note, finally, that the government has not requested that these cases be remanded in order to allow the district court to consider the propriety of enhancing the defendants' sentences on the remaining drug convictions pursuant to U.S.S.G. § 2D1.1(b)(1). Cf. United States v. Tucker, 90 F.3d 1135, 1143 (6th Cir.1996); United States v. Clements, 86 F.3d 599, 600-01 (6th Cir.1996). It has, accordingly, forfeited this argument.
 
 III.
 
 36
 The district court's judgments of conviction as to Sean Deveaux and Damon Deveaux are AFFIRMED with respect to the drug charges under 21 U.S.C. § 841(a)(1), but VACATED with respect to the firearm charges under 18 U.S.C. § 924(c)(1). The sentences in both cases are VACATED and these cases are REMANDED to the district court for resentencing.