**NOT RECOMMENDED FOR PUBLICATION**

File Name: 05a0078n.06

Filed: February 1, 2005

**No. 03-3493**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| RAYMOND ELLIS, | ) | OHIO |
| | ) | |
|     Defendant-Appellant. | ) | |

Before:     SILER and ROGERS, Circuit Judges; CALDWELL, District Judge.[*]

**SILER, Circuit Judge.** Raymond Ellis appeals the district court's denial of his motion to withdraw his guilty plea and its finding that he was an "organizer or leader" for purposes of the Sentencing Guidelines. We affirm.

**BACKGROUND**

James Moyer, Ralph Wise, and Ellis were arrested after an informant's tip about drug activity at a residence in Hilliard, Ohio. Surveillance of the residence led to an search of a car driven by Moyer and Wise that turned up nearly a kilogram of cocaine. Ellis was thereafter arrested at the residence in Hilliard during the execution of a search warrant.

---

[*]The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The search of the residence turned up a one-kilogram brick of cocaine, a handgun, blenders, packaging materials, and documents. The substance was analyzed by the Columbus Police Department and determined to be cocaine.

Ellis and Moyer admitted that they were part of a group who obtained large quantities of cocaine and marijuana from outside Ohio. Ellis also gave authorities the address of a residence in Shadeville, Ohio, the subsequent search of which turned up some 96 brick-sized wrappers and latex gloves. A search of Ellis's own residence turned up a drug ledger confirmed to be in Ellis's handwriting detailing the distribution of approximately 96 kilograms of cocaine.

In January 2002, Ellis, Moyer, and Wise were indicted for conspiracy and intent to distribute cocaine. Subsequently Ellis and Moyer requested an independent analysis of the cocaine which had been recovered from the residence in Hilliard. The second analysis by the DEA found that the Columbus Police Department's analysis had been erroneous and that the seized substance was not entirely cocaine.

On August 30, 2002, Ellis entered into a written plea agreement. The agreement provided that the amount of cocaine to be attributed to Ellis for purposes of the Sentencing Guidelines was to be between 50 and 150 kilograms, and that "the United States will disclose to the Probation Office and the Court all information in its possession concerning the facts applicable to a determination of whether either enhancement applies to defendant's case."

In September 2002, Ellis and Moyer appeared before the district court and pled guilty. In December 2002, Ellis filed a motion to withdraw his guilty plea. He alleged that the government had breached the terms of the plea agreement and had misrepresented certain facts. At a hearing on the motion, Ellis generally alleged that the government had "misrepresented its intent with regards

to following through with the terms of the plea agreement." Ellis did *not* argue (as he does now) that the government had withheld information, or that he believed that the plea agreement prevented even the United States Probation Office from taking a position on sentencing matters. The district court denied Ellis's motion. Ellis then filed a motion for reconsideration. In this motion Ellis made, for the first time, sweeping claims that he had not been involved in any conspiracy and that he had never possessed or intended to distribute cocaine.

After hearing argument on the motion for reconsideration and considering the DEA report indicating that the drugs seized at the Hilliard residence were not in fact wholly cocaine, the court denied Ellis's motion. It thereafter took up Ellis's many objections to his Presentence Investigation Report. The court sustained several objections but denied Ellis's objection to an enhancement based on his status as a "leader or organizer." The sentence imposed was for 188 months.

## STANDARD OF REVIEW

A district court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Riascos-Suarez,* 73 F.3d 616, 621 (6th Cir. 1996). "A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous." *United States v. Washington,* 127 F.3d 510, 515 (6th Cir. 1997) (quoting *United States v. Alexander,* 59 F.3d 36, 38 (6th Cir. 1995)).

## DISCUSSION

### A.     *The Denial of Ellis's Motion to Withdraw his Guilty Plea*

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty after the court has accepted the plea but before it imposes sentence if "the defendant can show a fair and just reason for requesting withdrawal." "Under the rule, then, the defendant

bears the burden of showing that the plea should be withdrawn." *Riascos-Suarez,* 73 F.3d at 621

(citation omitted). Whether a defendant's proffered reason for withdrawal is "fair and just" is

determined by considering the following factors:

> (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted.

*Id.*

Applying these factors in the instant case, Ellis's withdrawal motion is not compelling. As

to the first factor, at no time did Ellis assert a defense, nor has he consistently maintained his

innocence. As to the second factor, the length of time between the entry of Ellis's plea and his

motion to withdraw was extensive (93 days). This court has held that periods of delay from 35-77

days are too long to justify withdrawal of a guilty plea. *See United States v. Durham,* 178 F.3d 796,

799 (6th Cir. 1999). As to the fourth factor, Ellis's twenty-five prior experiences with the state court

system belies his assertion of intimidation.[1]

The only factor that appears to weigh in Ellis's favor is the third factor - Ellis's explanation

for "why the grounds for withdrawal were not presented to the court at an earlier time." Ellis

contends that he did not file earlier because the government did not inform him of the erroneous

crime lab test until just before sentencing. The government, however, represented to the court that

it informed defendant's counsel of the test results in June 2002, some three months before Ellis

entered his plea. In any event, before Ellis entered his plea, he was granted permission to have the

---

[1] With regard to the fifth factor, the government does not argue that it would be prejudiced if Ellis is permitted to withdraw his plea.

drugs independently tested, but apparently did not wait for the results before entering his plea.

In the final analysis, however, as the district court pointed out, the erroneously-tested drugs accounted for only 2.8 kilos of the 50-150 kilos to which Ellis pled. The 50-150 kilo quantity was supported primarily by 96 kilo wrappers and a drug-book ledger seized post-arrest. Thus, even assuming that the government failed to inform Ellis of the erroneous test result before Ellis entered his plea, and even assuming that Ellis could offer some explanation as to why he chose to enter his plea without first learning of the results of the independent tests, there was more than ample evidence to support the 50-150 kilo figure to which he stipulated as part of his plea.

On balance, considering the factors outlined above, it cannot be said that the district court abused its discretion in denying Ellis's motion to withdraw his guilty plea. Denial of Ellis's motion was neither unjust nor unfair under the circumstances.

B.        *Enhancement Under USSG § 3B1.1(c) for Being a "Leader or Organizer"*

The district court enhanced Ellis's offense level by two levels pursuant to USSG § 3B1.1(c) (2003), finding Ellis to be "an organizer, leader, manager, or supervisor in [the] criminal activity." Ellis takes exception to the district court's application of this enhancement.

Ellis's argument against application of the enhancement rested primarily on the fact that Ellis was a mere "equal" of Moyer - not a manager or supervisor of him. In support of his argument, Ellis noted the undisputed fact that Moyer and Ellis shared in the profits of their criminal activity equally. For its part, the government noted that Moyer went to Mexico at the behest of Ellis, that it was Ellis who had the Mexican connections, and that Ellis - himself having conceived the idea - recruited Moyer as an accomplice.

Because there was evidence to support the district court's finding, its conclusion that

application of the enhancement was appropriate cannot be said to be "clear error."

### C. Breach of Plea Agreement

Ellis also argues that the government breached the plea agreement in allowing the U.S. Probation Office to take a position on a role enhancement, and in allowing a DEA agent to provide the Probation Office with information necessary to compose Ellis's Presentence Investigation Report. The government did not breach the plea agreement. The plain language of the plea agreement - specifically, paragraph nine - calls for information to be provided to the Probation Office for the purposes of determining whether the relevant enhancements applied. Although statements made to the Probation Office by a case agent could be construed as offering an opinion about whether a particular enhancement was appropriate, the Probation Office made an independent determination that the enhancement was warranted under the circumstances of this case. The government took no position on whether the district court should adopt the Probation Office's recommendation. Moreover, it is not a violation of the plea agreement for the government to defend on appeal the district court's findings for determining Sentencing Guideline ranges.

**AFFIRMED**.