USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1016 UNITED STATES, Appellee, v. FELIPE RAMIREZ-FERRER, Defendant - Appellant. ____________________ No. 94-1017 UNITED STATES, Appellee, v. JORGE L. SUAREZ-MAYA, Defendant - Appellant. ____________________ No. 94-1018 UNITED STATES, Appellee, v. PAUL TROCHE-MATOS, Defendant - Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Roxana Matienzo-Carri n, by Appointment of the Court, for ________________________ appellant Felipe Ram rez-Ferrer. Ram n Garc a-Garc a for appellant Jorge L. Su rez-Maya. ___________________ Francisco Serrano-Walker for appellant Ra l Troche-Matos. ________________________ Kathleen A. Felton, Attorney, Department of Justice, with ___________________ whom Guillermo Gil, United States Attorney, Jos A. Quiles- ______________ ________________ Espinosa, Senior Litigation Counsel, and Epifanio Morales-Cruz, ________ _____________________ Assistant United States Attorney, were on supplemental brief for appellee. ____________________ April 29, 1996 ____________________ -2- TORRUELLA, Chief Judge. Defendants-appellants TORRUELLA, Chief Judge. ______________ (collectively, "defendants") Felipe Ram rez-Ferrer ("Ram rez- Ferrer"), Jorge L. Su rez-Maya ("Su rez-Maya"), and Ra l Troche- Matos ("Troche-Matos") appeal their firearm convictions under 18 U.S.C. 924(c)(1). A previous panel of this court affirmed the convictions of Ram rez-Ferrer and Su rez-Maya for using a firearm in relation to a drug trafficking offense, but reversed a corresponding conviction of Troche-Matos. However, the original panel's opinion was withdrawn when the government's petition for an en banc was granted. The government has decided not to _______ contest the original panel's reversal of Troche-Matos' conviction. As a result, we reiterate that holding; our focus is on the appeals of Ram rez-Ferrer and Su rez-Maya. Although the firearm convictions were also to be reconsidered en banc, after the en banc oral argument was heard _______ _______ but before the en banc opinion was issued, the Supreme Court _______ rendered its opinion in Bailey v. United States, ___ U.S. ___, ______ _____________ ___, 116 S. Ct. 501, 505 (1995), clarifying the meaning of section 924(c)(1). In light of Bailey, the en banc court ______ _______ remanded the firearm convictions for the panel's consideration. We today affirm the convictions of Ram rez-Ferrer and Su rez- Maya. I. BACKGROUND I. BACKGROUND The evidence, taken in the light most favorable to the government, United States v. Abreu, 952 F.2d 1458, 1460 (1st ______________ _____ Cir.), cert. denied, 503 U.S. 994 (1992), permitted the jury to ____________ -3- find the facts that follow. Because the en banc decision _______ affirmed related drug possession convictions and reversed drug importation convictions for all three defendants, the sole remaining issue is the validity of the firearm convictions for using or carrying a firearm during and in relation to a drug trafficking crime pursuant to section 924(c)(1). Thus, we emphasize the facts pertinent to the firearms charge. On March 13, 1993, the Police of Puerto Rico ("POPR") received an anonymous telephone call. The caller informed the POPR that defendant Su rez-Maya and three other individuals planned to bring a load of cocaine by boat to the main island of Puerto Rico. Using a helicopter, the United States Customs Service (USCS) and POPR located the subject boat and Su rez-Maya, accompanied by three other men as described. The boat was interdicted about one mile off the southwest coast of Puerto Rico. After the boat was seized, it was found to be carrying about 16 kilograms of cocaine. A subsequent inventory search of the boat turned up a firearm. The seized firearm, a loaded revolver, was found covered by a T-shirt, behind a storage compartment near the location where Ram rez-Ferrer had been seated at the time of the interdiction. The search also revealed evidence linking the vessel to a relative of Su rez-Maya. On March 31, 1993, a grand jury indicted defendants on charges of possessing and carrying a firearm in relation to a drug trafficking crime (count 3), 18 U.S.C. 924(c)(1) (1994). -4- On September 28, 1993, a jury convicted all three defendants on this count. On count 1, later upheld by the en banc court, ________ relating to possession and importation of cocaine, Su rez-Maya was sentenced to life imprisonment, Ram rez-Ferrer to a term of 240 months, and Troche-Matos to a term of 120 months.1 The sentences of Su rez-Maya and Ram rez-Ferrer were enhanced under 21 U.S.C. 841(b) and 960(b) on account of prior drug crimes. On count 3, the firearm count, each appellant was sentenced to a mandatory minimum term of 60 months to be served consecutively, as required by the statute. II. DISCUSSION II. DISCUSSION Count 3 of the indictment charged that "the defendants herein, aiding and abetting each other, did knowingly, willfully and intentionally possess and carry a .32 caliber Smith & Wesson revolver during and in relation to a drug trafficking crime" in violation of 18 U.S.C. 924(c)(1). In the original panel opinion, we held that there was insufficient evidence for a jury to infer that defendant Troche-Matos was guilty of violating the statute or aiding and abetting in its violation. There was no evidence that Troche-Matos actually or constructively possessed the gun; nor was there evidence that he was aware of its existence. In view of the circumstances, we held that the only way a jury could link Troche-Matos to the gun would be through sheer speculation and conjecture. As the government did not  ____________________ 1 As noted, supra, the convictions of each appellant on count 2, _____ for importation of a controlled substance, were reversed by the en banc court. _______ -5- challenge these holding in its petition for rehearing en banc, we _______ reiterate that Troche-Matos' conviction on the gun count must be reversed for lack of sufficient evidence. As for Su rez-Maya and Ram rez-Ferrer, the scope of our present review was established by the en banc opinion, which held _______ that "defendants' conviction for 'use' should be vacated, and they should face only reconsideration of their convictions under the carry prong." Ram rez-Ferrer, slip op. at 10 (citing Bailey, ______________ ______ ___ U.S. at ___, 116 S. Ct. at 508-09). The en banc panel based _______ its holding on its understanding of Bailey as having limited the ______ word 'use' to the extent that it cannot apply in the instant case and having emphasized that "'carry' has meanings not covered by 'use.'" Id., slip op. at 10. ___ Although the defendants continue to style their appeal as an objection to sufficiency of the evidence, it is clear that the Supreme Court's decision in Bailey requires us to consider ______ whether the convictions on the gun count can be sustained despite the erroneous instruction of the district court. When we wrote the original panel opinion, the district court's instruction was an accurate account of the law of the circuit; but in light of Bailey, it is plainly incorrect in regard to the meaning of ______ "use." The district court gave the jury the following instruction on the elements of 18 U.S.C. 942(c)(1): [T]he Government is not required to prove that the defendant or defendants actually fired the weapon or brandished it . . . at someone in order to prove use, as that -6- term used [sic] in these instructions. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitating the commission of the drug offense, in other words, you must find that the firearm was an integral part of the offense charged. Now, to prove that a defendant carried a firearm, the Government does not only have to prove that a defendant carried a firearm, the Government need only prove that a firearm was accessible during and in relation to a drug offense. The district court's instruction, which could be heard by a reasonable jury to endorse the "fortress theory" rejected by Bailey, was (in hindsight) erroneous. However, the defendants ______ did not object to it; we therefore review only under a "plain error" standard. This standard requires not only that the error be plain -- which in light of Bailey this probably is -- but also ______ that affirmance would result in a "miscarriage of justice," one that would jeopardize public confidence in the integrity of the judicial process. United States v. Olano, 113 S. Ct. 1770, 1779 _____________ _____ (1993); United States v. Randazzo, Nos. 95-1489, 95-1768, slip ______________ ________ op. at 17 (1st Cir., April 8, 1996). In this case, the standard would require reversal of Su rez-Maya's and Ram rez-Ferrer's convictions only if we have substantial doubt about the certainty of the defendants' guilt. In making this determination, we consider both the evidence presented by the government and what we can infer from the verdict that the jury did in fact decide. We begin by defining "carry" for purposes of 18 U.S.C. 924(c)(1). We take our lead from United States v. Manning, No. _____________ _______ -7- 95-1199, slip op. (1st Cir. March 21, 1996), in which we affirmed a district court's denial of a motion for acquittal on 924(c)(1) charges based on Bailey's treatment of "use," because even though ______ "use" no longer could cover defendant's actions, those actions met "any reasonable construction" of "carry." Id., slip op. at ___ 6. In Manning, detectives ordered a defendant to stop while _______ defendant was holding a briefcase, which later was found to contain illegal drugs and a loaded handgun. Id., slip op. at 7. ___ We note in passing that either defendant may be convicted as "aiding and abetting" if one defendant is found to have carried a firearm in violation of section 924(c)(1), and if the evidence is sufficient for a jury to infer that the other defendant aided and abetted this conduct. As we noted in Manning, which was decided after the en _______ __ banc oral argument was heard and after Bailey, but before the en ____ ______ __ banc opinion was issued, "[b]y narrowing the interpretation of ____ 'use' to instances of active employment, the Bailey court ______ recognized that the 'carry' prong would take on a new significance." Id., slip op. at 6. Although in Manning, the ___ _______ court found that it did not have to delineate the "precise contours" of the "carry" prong, id., slip op. at 6, it noted that ___ "the word 'carry' is variously defined as 'to move while supporting (as . . . in one's hands or arms),' 'to move an appreciable distance without dragging,' and 'to bring along to another place,'" id., slip op. at 7 (quoting Webster's Third New ___ ___________________ -8- International Dictionary 343 (1986)).2 This focus on dictionary ________________________ meanings follows naturally from Bailey's reliance on the ______ "ordinary and natural" meanings in construing the term "use" in section 924(c)(1). See Bailey, 116 S. Ct. at 506 (discussing ___ ______ definitions taken from Webster's New International Dictionary of __________________________________________ English Language and Black's Law Dictionary). In Manning, the ________________ _______________________ _______ court concluded that the defendant's "alleged actions readily me[t] all of the[] definitions" of "carry" taken from Webster's. _________ Manning, slip op. at 7; see also United States v. Hern ndez, 1996 _______ ________ _____________ _________ WL 34822, *3, ___ F.3d ___ (9th Cir. 1996) (quoting Webster's and _________ Black's). _______ Our decision in Manning limits the construction of _______ "carry" to situations in which the "firearm" has been "moved" or "brought along to another place," since all three parts of the definition adopted there contain this element of transportation. See also United States v. Murrietta-N ez, 1996 WL 65240, *5 (9th ________ _____________ _______________ Cir. 1996) (rejecting the possibility of a "carry" prong-based conviction where a firearm was found under a bed near a bundle of marijuana, noting that "storing the gun for possible, later use" does not constitute "carrying" under Bailey); Hern ndez, 1996 WL ______ _________  ____________________ 2 With the first two of the three parts of the definition of "carry" relied on by the court in Manning, there is a seeming _______ ambiguity as to whether the subject of "to move" is the actor or the firearm -- that is, whether "move" is used here as a transitive or intransitive verb. The discussion in Manning _______ proceeds as though "move" were transitive. Because we do not believe it alters our analysis, we continue with this assumption, without deciding the question. From the evidence, the jury could reasonably infer both that the firearm moved and that defendants moved it (by having it aboard a moving boat). -9- 34822 at *3, ___ F.3d at ___ (concluding that "in order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the ___________ firearm on or about his or her person") (emphasis added). Furthermore, we must bear in mind that the government must present evidence from which a reasonable juror could conclude that this transportive function was "during" and "in relation to" the crime of possession with intent to distribute. See Manning, ___ _______ slip op. at 7 (quoting 924(c)(1)). However, unlike the court in Manning, we have no record _______ evidence from which a jury could reasonably infer that either Su rez-Maya or Ram rez-Ferrer moved the firearm while "supporting" it "in [their] hands or arms." However, transporting a firearm on a boat would certainly implicate moving it "an appreciable distance without dragging" it or bringing it "along to another place." As a result, we are forced move beyond Manning and map the contours of "carry" in further detail. _______ Specifically, we must decide whether there exists some required degree of proximity in conjunction with this drug crime-related transportation, which demands delving into a line-drawing problem. At one extreme, "carry" could be defined so narrowly as to only allow convictions where a factfinder could reasonably conclude that the defendant moved while maintaining actual physical contact with a firearm. At the other extreme, "carry" might be so loosely construed that a defendant could be deemed to "carry" the firearm when he or she merely had transported a -10- firearm without touching it or having it accessible -- for example, in a car trunk or in some hard-to-reach recess of a boat. We must address this question because while evidence was presented from which the jury could have reasonably inferred: (a) that the firearm was transported (on the boat) during and in relation to the drug crime in question and (b) that the firearm was within easy reach of defendant Ram rez-Ferrer, no evidence was proffered to justify a reasonable inference (c) that any defendant had any degree of physical contact with the weapon, or had otherwise "support[ed]" it, as "in one's hands or arms." Since Bailey, was decided, a few circuits have ______ addressed the scope of the "carry" prong. In Hern ndez, the _________ Ninth Circuit confronted a situation in which a gun was found in a locked toolbox together with cocaine in defendant's garage after defendant was arrested during a controlled buy. Hern ndez, _________ 1996 WL 34822 at *1-2. The Ninth Circuit concluded that, for a "carrying" conviction under section 924(c)(1), "the defendant must have transported the firearm on or about his person," meaning that "the firearm must have been immediately available for use by the defendant." Id. at *3. As a result, the Ninth ___ Circuit refused to find that the defendant carried a firearm for the purposes of section 924(c)(1). Two circuits have specifically addressed situations involving the presence of guns and drugs in automobiles. In United States v. Riascos-Su rez, 73 F.3d 616, 623 (6th Cir. ______________ ______________ 1996), the Sixth Circuit found a defendant's conduct sufficient -11- for conviction under the "carry" prong where the defendant had a gun on the driver's side of the dashboard console of a car that also contained drugs. The court there stated that it "h[e]ld that [defendant] carried the weapon for purposes of section 924(c)(1) because the firearm was within reach and immediately available for use." Id. at 623. The Sixth Circuit clarified its ___ definition of "carry" in United States v. Moore, 76 F.3d 111, 113 _____________ _____ (6th Cir. 1996). There, the court remanded a case in which the defendant also had guns within easy reach. Id. at 113-114. ___ However, the court distinguished the conduct of the defendant in Moore from that of the defendant in Riascos-Su rez because the _____ ______________ defendant in Moore did not bring the drugs with him in the course _____ of his drug trade. Id. at 113. The court noted that "immediate ___ availability is [] a necessary, but not sufficient determinant." Id. ___ The Eleventh Circuit has also addressed the carry prong in an automotive context. United States v. Farris, 1996 WL ______________ ______ 82490, *1-3 (11th Cir. 1996). In Farris, the Eleventh Circuit ______ confronted a situation where a firearm was found in the glove compartment of a co-conspirator's car used to transport illegal drugs to the controlled buy at which defendant was arrested, and which contained drugs. Id. Though it upheld conviction under ___ the "carrying" prong, the Eleventh Circuit did not state its opinion as to the government's broader argument in that case, unqualified by any requirement of "accessibility," that "section -12- 924(c) applies when a defendant carries a firearm in a vehicle that is being used as a base for drug distribution." Id. at *3. ___ Defendants here do not dispute that the weapon was aboard a moving boat, and the en banc court has upheld ________ defendants' possession convictions. Thus, they do not challenge the proposition that they physically caused the weapon in __________ question to be transported and that this transportation was during -- in the sense of contemporaneous with -- their crime of possession with intent to distribute illegal drugs. The evidence here, including diagrams of the boat with the position of defendants and the weapon clearly indicated, was sufficient for a reasonable jury to infer that the loaded gun was within easy reach of defendant Ram rez-Ferrer. Given the above persuasive authority emphasizing accessibility and transport and given the ___ facts of the instant case, we hold that Ram rez-Ferrer's conduct suffices for conviction under an ordinary and natural meaning of the word "carry." We express no opinion, however, on the theory that a conviction for "carrying" may be upheld whenever a gun is merely present on a boat or other vehicle employed in a drug possession crime, regardless of accessibility. Ram rez-Ferrer's proximity also suffices for a jury reasonably to infer that Su rez-Maya, as captain of the boat and the defendant apparently responsible for the particular boat (it allegedly belonged to a relation of his), aided and abetted Ram rez-Ferrer's conduct. See, e.g., United States v. Price, 1996 WL 67398, *4 (3d Cir. ___ ____ _____________ _____ 1996) (upholding conviction of defendant for aiding and abetting -13- co-defendant's 924(c)(1) violation, since jury could have concluded, from ample evidence, that defendant knew of and benefitted from co-defendant's gun-related conduct). Thus, we uphold both defendants' convictions under section 924(c)(1)'s "carry" prong. Ram rez-Ferrer and Su rez-Maya also argue that even if they "carried" the gun "during" their drug crime, they did not do so "in relation" to their drug crime. Specifically, they argue that they did not know the gun was there, pointing out that it was rusty and that the boat did not belong to either of them. But the defendants do not allege that there was any error in the jury instructions in this regard. Therefore, the short answer to this objection is that we affirm a jury's conviction if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt. See Farris at *3. The evidence need ___ ______ not exclude every hypothesis of innocence. Id. The jury could ___ reasonably have attributed knowledge and intent to benefit from the gun to both Ram rez-Ferrer and Su rez-Maya, the boat's captain and the self-admitted principal with respect to the drug possession offense. Thus, the evidence is sufficient to uphold both defendants' convictions under section 924(c)(1). CONCLUSION CONCLUSION As a result of the foregoing, the judgment of the district court is reversed in part and affirmed in part. reversed in part affirmed in part ________________ ________________ -14-