NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0143n.06

Case No. 23-5007

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="7"></td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>CHARLES RAY EDWARDS, JR.,</td><td>)</td></tr>
<tr><td style="padding-left:2em">Defendant-Appellant.</td><td>)</td></tr>
</table>

**FILED**
Mar 12, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: WHITE, READLER, and MATHIS, Circuit Judges.

MATHIS, J., delivered the opinion of the court in which WHITE and READLER, JJ., concurred. READLER, J. (pp. 12–21), delivered a separate concurring opinion.

**MATHIS, Circuit Judge.** A jury convicted Charles Edwards of robbery and several drug and firearm offenses. The district court sentenced him to 1,260 months' imprisonment. Edwards appeals his convictions and sentence. We affirm.

**I.**

Beginning in October 2017, Edwards regularly traveled from Michigan to Kentucky for days at a time to sell drugs with the help of several others. Over time, Edwards developed a robust drug-distribution plan where he would travel to Kentucky and "front" drugs to local drug dealers— the dealers would sell the drugs and send Edwards his proceeds. Edwards frequently possessed a firearm during these drug transactions and often accepted firearms in exchange for heroin.

On September 29, 2018, Edwards, while staying at a motel in Kentucky, agreed to sell heroin to a regular buyer, Kim Griffith. Griffith drove with her boyfriend and a friend to the motel

parking lot, where Edwards met them. After Edwards completed the drug sale with Griffith, she called her boyfriend over to distract Edwards while she stole a larger portion of Edwards's heroin. When Edwards learned Griffith had stolen from him, he planned to "get [his] stuff back" and "get even with them." R. 150, PageID 1173–74. That night, another one of Edwards's customers drove him to Griffith's house, and Edwards got out of the car and started shooting at Griffith's boyfriend and the friend. When Edwards returned to the car, he told the driver that he "took care of it" and to "let no one find out about it." *Id.* at 1174.

A few months later, Edwards returned to Kentucky with more drugs. On January 15, 2019, Edwards and Philip Lewis exchanged heroin for an assault rifle with two of Edwards's customers. One of the customers, Patricia Messer, informed Edwards and Lewis that she previously worked at the A&B Quickstop and detailed where large sums of money could be found in the store. Later, Lewis, wearing a dark hoodie, went inside the A&B Quickstop to rob it and attempted to the shoot the store clerk, Adam Soper, but his gun misfired. Soper then retreated to a back room in the store. One customer, Gary Medlin, tried to escape out the front door but Lewis shot and killed him. Lewis fled and was later arrested and convicted in state court for the attempted robbery. Law enforcement did not immediately connect Edwards to the attempted robbery. By February 2021, law enforcement learned of Edwards's drug dealing and arranged a controlled buy. After officers arrested Edwards, he admitted to trafficking heroin from Michigan to Kentucky.

A grand jury indicted Edwards for: (1) distributing heroin and possessing with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 1); (2) using, carrying, and discharging a firearm during and in relation to Count 1, in violation of 18 U.S.C. § 924(c) (Count 2); (3) possessing with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 3); (4) conspiracy to distribute oxycodone and fentanyl, in violation of 21 U.S.C.

§§ 841(a)(1), 846 (Count 4); (5) possessing a firearm in furtherance of the Count 4, in violation of 18 U.S.C. § 924(c) (Count 5); (6) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 6); and (7) aiding and abetting an attempted robbery, in violation of 18 U.S.C. §§ 1951, 2 (Count 7).

Edwards proceeded to trial. At trial, several of Edwards's regular drug customers testified about the method and frequency of his drug-trafficking scheme, which included the use of firearms and fronting drugs. Griffith and the customer who drove Edwards to Griffith's house testified as to the stolen heroin and the resulting shooting that occurred on September 29, 2018. Soper testified about the A&B Quickstop attempted robbery. And Messer testified about the information she gave to Lewis and Edwards before the attempted robbery. The government also admitted video footage of the attempted robbery which included Lewis shooting Medlin. Jermaine Matthews, who at times assisted Edwards in trafficking drugs from Michigan to Kentucky, testified that Edwards said he was at the A&B Quickstop with "people that he knew from Flint" when someone "got killed there." R. 151, PageID 1338. Law enforcement officers testified about the controlled buy and eventual arrest of Edwards. A jury convicted Edwards on all counts, and the district court imposed a sentence of 1,260 months' imprisonment, a sentence within the advisory Sentencing Guidelines range. Edwards now appeals his convictions and sentence.

## II.

On appeal, Edwards argues: (1) the district court improperly admitted evidence of the shooting death of a store patron during an attempted robbery; (2) the evidence was insufficient to support his convictions; and (3) his sentence is procedurally and substantively unreasonable. We address each argument in turn.

**A.**

Edwards first argues that the testimony about, and video of, Medlin's death were unfairly prejudicial to him under Federal Rule of Evidence 403 because the evidence was irrelevant and inflamed the jurors' emotions. We generally afford a district court "broad discretion in conducting th[e Rule 403] balancing test." *United States v. Wilder*, 87 F.4th 816, 819 (6th Cir. 2023) (internal quotation marks omitted). But Edwards failed to object to the admission of the evidence in question. So he has an even greater hurdle to overcome—plain-error review. *See* Fed. R. Crim. P. 52(b). To establish plain error, Edwards must "show an (1) error (2) that was clear or obvious, (3) that affected his substantial rights, and (4) that affected the judicial proceeding's fairness, integrity, or public reputation." *United States v. Vaughn*, 119 F.4th 1084, 1087 (6th Cir. 2024) (internal quotation marks omitted).

At trial, the government used both Soper's testimony and video footage of the attempted robbery at the A&B Quickstop as evidence of Edwards's participation in the crime. The government admitted video footage of the attempted robbery from multiple angles without objection. Soper recounted the attempted robbery while contemporaneously narrating the videos. The video shows Lewis walking into the A&B Quickstop and stopping near the beverage aisle. Shortly after, Lewis approached the front counter and pointed a gun at Soper. Lewis pulled the trigger, but the gun misfired. Soper then rolled out of his chair and ran away as Lewis followed still attempting to shoot Soper. Soper ran to the back room of the A&B Quickstop where he locked himself and four other store patrons to protect against Lewis. As Soper was running to the back room, Medlin ran out into the main store area, and Lewis shot at him. Soper heard the gun shot and later found Medlin in the front doorway of the A&B Quickstop. One video angle from the back of the store showed Medlin falling to the floor and crawling out of frame after Lewis shot

him. Another camera facing the outside of the front door showed Medlin collapsing in the doorway right before Lewis stepped over him and fled. Edwards challenges only the admission of the portion of the videos depicting the shooting of Medlin.

The evidence in question was at least marginally relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This means that each piece of evidence presented need not directly prove or disprove an element of an offense to be relevant. Instead, the evidence need only have "the slightest probative worth," *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (quotation omitted), by "advanc[ing] the ball one inch" in the government's incremental case, *United States v. Lang*, 717 F. App'x 523, 530 (6th Cir. 2017) (internal quotation marks omitted). The video evidence, including the shooting of Medlin, was relevant because it tied Edwards to the attempted robbery: Edwards told Matthews that he was in a car at the A&B Quickstop with "people that he knew from Flint" when someone was killed at the store. R. 151, PageID 1338. Matthews testified that Edwards did not "say[] much about it being robbed"; instead, he "just remember[ed] that somebody being killed [*sic*]." *Id.* The video evidence of Lewis, who is from Flint, shooting Medlin in the A&B Quickstop therefore aligns with Matthews's testimony placing Edwards at the A&B Quickstop the night of the attempted robbery. Further, Soper testified about the shooting, and the video confirmed Soper's testimony and depicted an event that Soper only heard while he was hiding in the back room of the A&B Quickstop—Lewis firing the gun at, and killing, Medlin. The admission of the entire video footage is "a step on one evidentiary route to the ultimate fact" of Edwards's involvement in the attempted robbery. *See Old Chief v. United States*, 519 U.S. 172, 179 (1997).

Having determined the video evidence of the attempted robbery is relevant, we must still determine if the district court should have excluded the evidence under Federal Rule of Evidence 403. That rule allows courts to exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Edwards contends that the video inflamed the jurors' emotions and was duplicative of Soper's testimony. Though Edwards offers a colorable theory as to some prejudicial effect from the video of Medlin's shooting and death, our independent review confirms that the video was neither graphic nor shocking and did not rise to the level of unfair prejudice necessitating that the district court exclude the video sua sponte. *See United States v. Hazelwood*, 979 F.3d 398, 411–14 (6th Cir. 2020). And even so, our test does not credit just any prejudicial effect—it must be unfair and so substantial to outweigh the probative value. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996) ("Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." (citation omitted)). That overwhelming imbalance does not exist here because the video was hardly gruesome or offensive enough to "change the tone and tenor of the trial." *United States v. Harvel*, 115 F.4th 714, 737 (6th Cir. 2024) (internal quotation marks omitted).

Thus, the district court did not plainly err in admitting the evidence related to Medlin's shooting and death.

**B.**

Edwards next challenges the sufficiency of the evidence supporting his convictions. Although we review this issue de novo, Edwards must still clear a high hurdle. *United States v.*

*Lechner*, 806 F.3d 869, 883 (6th Cir. 2015). Our review assesses "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ledbetter*, 929 F.3d 338, 351 (6th Cir. 2019) (internal quotation marks omitted). Importantly, we do "not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009) (quotation omitted). And "we draw all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016) (internal quotation marks omitted). "Circumstantial evidence alone is sufficient to support a conviction." *Ledbetter*, 929 F.3d at 353 (quotation omitted). Defendants raising insufficiency-of-the-evidence arguments must satisfy a "very heavy burden." *Id.* at 351 (quotation omitted).

Edwards argues that there was insufficient evidence to support his convictions for Counts 1, 2, 3, 4, 5, and 7 because the government's witnesses who offered testimony in support of those charges were not credible. Edwards's credibility argument must fail. We do not assess the credibility of witnesses, especially in the context of a sufficiency-of-the-evidence challenge, because "[o]ur duty to interpret the evidence in the government's favor means that we must assume that the jury accepted the credibility of these witnesses." *United States v. Hinojosa*, 67 F.4th 334, 341 (6th Cir. 2023). So even if there is good reason to doubt the credibility of a witness, the jury was responsible for resolving such doubt. *Id.* Accordingly, because Edwards presents "non-reviewable credibility questions," we will not disturb the jury's findings. *United States v. Sadler*, 24 F.4th 515, 547 (6th Cir. 2022) (quotation omitted).

Edwards next challenges the sufficiency of the evidence on Count 6, the felon-in-possession charge. To obtain a conviction, the government had to prove that Edwards: (1) "was a felon"; (2) "knew of his felon status"; (3) "knowingly possessed a firearm"; and (4) "the firearm traveled through interstate commerce." *United States v. Crump*, 65 F.4th 287, 293 (6th Cir. 2023). Edwards disputes that the government proved that he knowingly possessed a firearm. At trial, a witness testified that, in April 2018, Edwards exchanged a gram of heroin for a Springfield .40 handgun. Prior to giving the gun to Edwards, the witness posted a picture of the gun on Facebook. A rational trier of fact could find that Edwards knowingly possessed the gun.

Edwards also challenges the sufficiency of the evidence for Counts 2 and 5, his two convictions under 18 U.S.C. § 924(c). Section 924(c) penalizes using, carrying, or possessing a firearm "during and in relation to any . . . drug trafficking crime" or "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). The trial evidence supports the jury's finding that Edwards used a firearm to recover the heroin stolen by Griffith, which occurred during and in relation to the heroin-distribution offense in Count 1. As the district court noted, a reasonable jury could find that Edwards satisfied the "during" aspect of the § 924(c) conviction when he discharged the firearm as a means of retaliation in relation to the drug-trafficking criminal episode. *See United States v. Helton*, 32 F. App'x 707, 714 (6th Cir. 2002) (defendant used a gun "during" a drug-trafficking offense when he shot an individual believed to have stolen drugs from him in an ultimately unsuccessful attempt to recover (and then sell) the drugs). A jury could also reasonably find that Edwards possessed a firearm in furtherance of the three-year drug conspiracy, as witnesses testified that Edwards had a firearm with him during many of the drug transactions and traded drugs for firearms.

**C.**

Finally, Edwards argues that his sentence is procedurally and substantively unreasonable. We review the district court's sentence for procedural and substantive reasonableness under the abuse-of-discretion standard. *United States v. Denny*, 653 F.3d 415, 423 (6th Cir. 2011). Our review of the procedural reasonableness of a sentence asks "whether the trial court follow[ed] proper procedures and [gave] adequate consideration to the § 3553(a) factors." *United States v. Ralston*, 110 F.4th 909, 918–19 (6th Cir. 2024) (alterations in original) (quotation omitted). Improper procedures include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016) (quotation and emphasis omitted). On the other hand, "[a] claim that a sentence is substantively unreasonable is a claim that a sentence is too long," such as if the "court placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Although a within-Guidelines sentence is afforded the presumption of substantive reasonableness, a defendant can rebut the presumption by showing the district court arbitrarily chose the sentence or unreasonably balanced or ignored the § 3553(a) factors. *United States v. Xu*, 114 F.4th 829, 846–47 (6th Cir. 2024).

Edwards's presentence report recommended a total offense level of 43 and a criminal history category of IV, creating an advisory Guidelines sentence of 1,260 months' imprisonment. Edwards did not seek a downward departure but instead argued for a below-Guidelines sentence based on the disparity between his advisory Guidelines sentence and Lewis's 35-year state sentence for the attempted robbery. After considering Edwards's arguments and reviewing the

§ 3553(a) sentencing factors, the district court sentenced Edwards to 1,260 months' imprisonment. Edwards raised no objections to his sentence or the district court's explanation of the sentencing factors.

*Procedural Reasonableness.* Edwards raises two arguments attacking the procedural reasonableness of his sentence: (1) he complains that the district court failed to depart from his advisory Guidelines sentence of 1,260 months' imprisonment, and (2) he argues that the district court failed to account for the disparity between his sentence and Lewis's state sentence.

Edwards waived his downward-departure argument because he did not seek a departure at sentencing. *See United States v. Wheaton*, 517 F.3d 350, 370 (6th Cir. 2008).

And his sentence-disparity argument fails because he received a within-Guidelines sentence. District courts, in sentencing defendants, must consider "the need to avoid unwarranted sentence disparities . . . ." 18 U.S.C. § 3553(a)(6). We have, however, explained that "Section 3553(a)(6) is . . . an improper vehicle for challenging a within-[G]uidelines sentence." *United States v. Medlin*, 65 F.4th 326, 334 (6th Cir. 2023) (internal quotation marks omitted). Because Edwards received a within-Guidelines sentence, "there are no grounds to say that the district court improperly compared" his sentence with the sentence of other individuals involved in similar conduct with similar records. *See id.*

*Substantive Reasonableness.* Edwards's substantive-reasonableness argument fails for similar reasons. He relies on the Sentencing Commission's data to support his argument that his sentence is outside the heartland of cases. But "given the choice between raw data from the Commission or the Guidelines, the latter is our 'barometer for promoting nationwide sentencing uniformity.'" *United States v. Vance*, Nos. 23-5766/23-5773, 2024 WL 4867049, at *14 (6th Cir.

Nov. 22, 2024) (quoting *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021)).  Here, the district court followed the Guidelines.

## III.

For these reasons, we **AFFIRM** the district court's judgment.

CHAD A. READLER, Circuit Judge, concurring. A jury convicted Charles Ray Edwards, Jr. of using a firearm "during and in relation to" a drug possession crime and discharging the firearm. 18 U.S.C. § 924(c)(1)(A)(iii). To Edwards's mind, the evidence was insufficient to support his conviction. I agree with my colleagues that, in view of the instructions given to the jury, Edwards's argument fails. But had Edwards challenged those instructions, this case would be far more difficult. For there appears to be tension between § 924(c)(1)(A)'s text and our Circuit's pattern jury instructions, to say nothing of our case law governing the issue.

A. Start with the statutory prohibition. Section 924(c)(1)(A) imposes a five-year minimum sentence on any person who "uses or carries" a "firearm" "during and in relation to" a "drug trafficking crime." *Id.* § 924(c)(1)(A). The sentence jumps to a minimum of ten years "if the firearm is discharged." *Id.* § 924(c)(1)(A)(iii). Here, the government indicted Edwards for "us[ing] and . . . discharg[ing]" a firearm "during and in relation to" such a crime—namely, possession of heroin with intent to distribute. R. 76, PageID 246. (While the government charged Edwards for using and discharging a firearm, I will refer in this opinion to the specific act of *using* a firearm because the government proceeded under the theory that Edwards *used* a firearm, for purposes of this § 924(c)(1)(A)(iii) charge, by *discharging* it. *See* Appellee Br. 18; *see also United States v. Brown*, 560 F.3d 754, 767 (8th Cir. 2009) (explaining that a defendant who *discharges* a firearm necessarily *uses* the firearm).) Edwards was later convicted by a jury, a verdict he believes is not supported by sufficient evidence. Why? His argument is straightforward. He concedes that he used a firearm by discharging it. And he concedes that he was in possession of heroin he intended to distribute. But, he emphasizes, those acts did not occur at the same time, as he used the firearm several hours after he possessed any heroin. That means, suggests Edwards, he did not use a firearm *during* his possession of heroin. *See* Appellant Br. 30 (arguing that "the drug crime

- 12 -

at issue . . . had been concluded" by the time the firearm was discharged); *see also* Appellant Reply Br. 9 (arguing that he cannot be convicted of violating § 924(c)(1)(A) because he used a gun after "any previously concluded [drug offense]").

On this record, Edwards's legal argument is not farfetched. The statue of conviction, again, penalizes any person who "uses" a "firearm" "during and in relation to" a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Keeping in mind that "*and* combines items," Antonin Scalia & Bryan A. Garner, *Reading Law* 116–17 (2012), the *and* in the phrase "during and in relation to" signals that a violation occurs only if a firearm was used both (1) *during* a drug trafficking crime, and (2) *in relation to*, that drug crime. While the preposition "during" and the phrase "in relation to" perhaps carry some shared meaning, each element must be demonstrated to prove a statutory violation.

The Supreme Court has consistently hewed to this understanding in interpreting § 924(c)(1). Consider *Muscarello v. United States*, 524 U.S. 125 (1998). There, the Supreme Court explained that § 924(c)(1)(A) is "applicable only where a defendant" uses "a gun *both* 'during *and* in relation to' a drug crime." *Id.* at 137. That understanding built on an earlier holding, *Smith v. United States*, 508 U.S. 223 (1993), which made a point first to analyze whether a defendant used a firearm *during* a drug crime before analyzing whether he also used the firearm *in relation to* that drug crime. *Id.* at 237. Against this backdrop, it is perhaps no surprise that sister circuits have similarly understood the phrase "during and in relation to" as having two separate elements. *See, e.g.*, *United States v. Long Pumpkin*, 56 F.4th 604, 614 (8th Cir. 2022) (explaining that the defendants did not discharge firearms "during" the time they committed the crime of carjacking because "the carjacking offense necessarily ended before [the] firearms were discharged"); *United States v. Powell*, 128 F. App'x 590, 592 (9th Cir. 2005) (recognizing that the

phrase "during and in relation to" has two different elements); *United States v. Timmons*, 283 F.3d 1246, 1251 (11th Cir. 2002) ("There is little question that to the extent that an offense occurred, it happened 'during' the commission of a drug offense as the gun was sold along with the drugs. [The defendant's] challenge therefore rests on whether the carrying of the firearm occurred 'in relation to' a drug trafficking offense."); *United States v. Young*, 316 F.3d 649, 662 (7th Cir. 2002) (explaining that "the terms 'during' and 'in relation to' have separate meanings under § 924(c)(1)(A)"); *United States v. Harrison*, 103 F.3d 986, 990 (D.C. Cir. 1997) (explaining that "because the predicate offense . . . had been completed . . . some 15 to 20 minutes" before the defendant carried a firearm, he did not carry the firearm "'during' the underlying offense of possession with intent to distribute").

How, then, should we understand the two components in the phrase "during and in relation to"? Dictionary definitions together with Supreme Court precedent provide a ready answer. First, "during." Dictionaries reveal a number of similar meanings, including "throughout the duration of" or "at a point in the course of." *During*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/during (last visited Feb. 8, 2025); *see also During*, Oxford English Dictionary, https://doi.org/10.1093/OED/3346004359 (last visited Feb. 8, 2025) ("Throughout the whole continuance of; hence, in the course of, in the time of."). Now, "in relation to." This phrase, the Supreme Court has instructed, "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime[]"; in other words, the firearm "at least must facilitate, or have the potential of facilitating the drug trafficking offense." *Smith*, 508 U.S. at 238 (internal quotation marks, alterations, and citation omitted). Reading all parts of the statutory whole, a person in this setting violates § 924(c)(1)(A) where he uses a firearm at some point in the course of, and with respect to, a drug crime. *Cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 284 (1999) (Scalia,

J., dissenting) ("§ 924(c)(1) is violated only so long as, *and where*, both continuing acts are being committed simultaneously. That is what the word 'during' means.").

How do these distinct requirements apply in practice? Admittedly, it may be the rare situation where a drug dealer uses a firearm *during* a drug crime, but does not do so *in relation to* the drug crime. But, as Edwards's case shows, it may well be possible for a drug dealer to use a firearm *in relation to* a particular drug crime, but not *during* that drug crime. Recall the facts here. Edwards sold heroin to Kim Griffith in a motel parking lot. R. 150, PageID 1201. While Edwards was distracted, Griffith stole the remainder of Edwards's heroin supply, approximately 97 grams. *Id.*, PageID 1201–02. Upon later realizing what had happened, Edwards set out to "get [his] stuff back" and "get even." *Id.*, PageID 1174. So early the next day, Edwards went to Griffith's home, where he shot Griffith's boyfriend.

Juxtapose those acts with the elements of the charged § 924(c)(1)(A) offense. Edwards's possession charge rested solely on the fact that he sold heroin to Griffith. R. 153, PageID 1708–09. His use of a firearm, in turn, rested solely on the fact that he shot Griffith's boyfriend several hours after he sold heroin to Griffith. *See* Appellee Br. 18. Demonstrating possession, the jury was instructed, required evidence of Edwards's "direct, physical control" of heroin. R. 153, PageID 1773. Yet the government failed to show that Edwards had control over any heroin when he shot Griffith's boyfriend, which, again, occurred the day after Edwards sold heroin to Griffith. Nor, as the government concedes, did Edwards "recover the [stolen] heroin" after he shot his gun. Appellee Br. 17. From this record, Edwards advances a plausible (if not compelling) argument that he did not use a firearm *during* the time he possessed heroin with intent to distribute. By all accounts, Edwards no longer possessed heroin when he used his firearm.

B. The problem for Edwards is that the instructions read to the jury at trial arguably did not track the text of § 924(c)(1)(A). In those instructions, the district court defined the phrase "during and in relation to" to mean that "the firearm must have some purpose or effect with respect to the [possession of heroin] crime." R. 153, PageID 1777. In other words, the court explained, "the firearm must facilitate or further, or have the potential of facilitating or furthering, the [possession of heroin crime], and its presence or involvement cannot be the result of accident or coincidence." *Id.* From these instructions, at least one rational trier of fact could have found that Edwards's discharge of the firearm shared a purpose with respect to his possession of heroin. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The record, remember, shows that Edwards went to Griffith's home to "get [his] stuff back." R. 150, PageID 1174.

At the same time, these instructions have the effect of reading the term "during" out of § 924(c)(1)(A). As delivered, the instructions require that the government prove only that Edwards used a firearm "in relation to" his possession of heroin. The phrase "have some purpose or effect with respect to the [possession of heroin] crime" is tied to the Supreme Court's reading of the phrase "in relation to," which it understood to mean that "the firearm must have some purpose or effect with respect to the drug trafficking crime[]." *Smith*, 508 U.S. at 238. As today's record reveals, however, a firearm could "have some purpose or effect with respect to [a possession of heroin] crime," yet not be used "throughout the duration of" or "at a point in the course of" that possession. Edwards seemingly used his firearm "in relation to" a "drug trafficking crime," that is, during his quest to recover heroin stolen in conjunction with the earlier drug deal, but not "during" that trafficking crime.

The apparent tension between § 924(c)(1)(A) and Edwards's jury instructions, however, does nothing to aid his appeal. He did not challenge those instructions in district court or on appeal.

R. 152, PageID 1664–65. Instead, he makes a sufficiency of the evidence challenge. That likely means that we gauge his sufficiency challenge by reference to the instructions as given. *United States v. Houston*, 792 F.3d 663, 669–70 (6th Cir. 2015) (explaining that, when jury instructions "omit or inaccurately describe an element of the offense and the defendant fails to object," as here, we "measure the sufficiency of the evidence to convict" under the instructions given). Even if Edwards's argument can be repackaged as a challenge to the sufficiency of the evidence under jury instructions that should have been given, I would review that challenge for plain error only. *United States v. McCoy*, 108 F.4th 639, 645 (8th Cir. 2024) (en banc) (explaining that a court should review a "sufficiency challenge for plain error only" when the "essence" of the defendant's argument is "that there was insufficient evidence to convict him under a jury instruction that the court should have given, despite his acquiescence to the instruction the court actually gave") (citation omitted). And, as explained below, Edwards cannot overcome plain error review.

That prompts this question: How would his case have been resolved had he challenged those instructions as inconsistent with the text of § 924(c)(1)(A)? The answer is not entirely evident, given our past reflections on the issue. Before criticizing the district court, one should know that the instructions it delivered were premised on the Sixth Circuit's pattern instructions, which, in turn, are premised on Supreme Court and circuit precedent. To my mind, our pattern instructions over time appear to have collapsed the "*during* and *in relation to*" elements of § 924(c)(1)(A) into one comprehensive element.

First things first: precedent. In 1993, in *Smith*, again, the Supreme Court clarified that the phrase "in relation to" meant "that the firearm must have some purpose or effect with respect to the drug trafficking crime[]." *Smith*, 508 U.S. at 238. In the years that followed, we issued two decisions—*United States v. Riascos-Suarez*, 73 F.3d 616 (6th Cir. 1996), and *United States v.*

*Warwick*, 167 F.3d 965 (6th Cir. 1999)—that cited *Smith* in defining the phrase "in relation to." *See Riascos-Suarez*, 73 F.3d at 623; *Warwick*, 167 F.3d at 971. That was to be expected. In defining a statutory phrase, inferior federal courts routinely cite on-point, controlling Supreme Court precedent.

But soon, complications arose. In *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), we quoted *Riascos-Suarez*'s interpretation of "in relation to" seemingly to define the entire phrase "during and in relation to." "To be during and in relation to the drug trafficking crime," *Gibbs* explained, "'the Government must prove that the firearm furthered the purpose or effect of the crime . . . .'" *Id.* at 426 (quoting *Riascos-Suarez*, 73 F.3d at 623). A few years later, in *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), we similarly quoted *Warwick*'s interpretation of "in relation to" in our effort to define the phrase "during and in relation to." "The 'during and in relation to' element," *Combs* said, "requires that the firearm 'furthered the purpose or effect of the crime . . . .'" *Id.* at 933 (quoting *Warwick*, 167 F.3d at 971). In effect, *Gibbs* and *Combs* appear to have invoked our earlier cases (*Riascos-Suarez* and *Warwick*) interpreting "in relation to" as setting forth the definition for the broader phrase "during and in relation to."

Enter now the Sixth Circuit's Committee on Pattern Jury Instructions. In 2005, canvassing all of the just-described cases, the Committee defined (apparently for the first time) the phrase "during and in relation to" in § 924(c)(1)(A). That phrase, the instructions said, required that "the firearm must have some purpose or effect with respect to the crime charged in Count ___; in other words, the firearm must facilitate or further, or have the potential of facilitating or furthering, the crime charged in Count ___." Pattern Criminal Jury Instructions 386 (Sixth Circuit Comm. on Pattern Jury Instructions Rev. ed. 2005). The definition of "during and in relation to" remains a part of our Circuit's current pattern instructions. *See* Pattern Criminal Jury Instructions 303 (Sixth

Circuit Comm. on Pattern Criminal Jury Instructions 2024). And it is the language used by the district court at Edwards's trial. *See* R. 153, PageID 1777,

How did the Committee construct its definition of "during and in relation to"? The commentary to the 2005 pattern instruction provides clues. There, the Committee began by noting that the Supreme Court (in *Smith*) and our Circuit (in *Riascos-Suarez*) had defined the phrase "in relation to." *See* Pattern Criminal Jury Instructions 391–92 (Sixth Circuit Comm. on Pattern Jury Instructions Rev. ed. 2005). The Committee then recognized that the Sixth Circuit in *Gibbs* and *Combs* had invoked *Smith* and *Riascos-Suarez* apparently to define the entire phrase "during and in relation to." The commentary summed things up this way: "In recent cases, the Sixth Circuit has used both the *Smith* language and the *Riascos-Saurez* language to define 'during and in relation to.'" *Id.* at 392 (first citing *Combs*, 369 F.3d at 933; then citing *Gibbs*, 182 F.3d at 426). With this in mind, the Committee decided to "use[] the words from the Supreme Court in *Smith* to define the phrase during and in relation to in [§ 924(c)(1)(A)]." *Id.*

In short, *Gibbs*'s and *Combs*'s apparent use of *Smith*'s interpretation of "in relation to" to define the phrase "during and in relation to" became the Committee's definition for "during and in relation to." Indeed, the 2005 commentary repeatedly refers to the phrase "during and in relation to" in § 924(c)(1)(A) as the "during-and-in-relation-to *element*." *Id.* at 392 (emphasis added). In so doing, the Committee gave the phrase "during and in relation to" one comprehensive definition. So to the extent the instruction at Edwards's trial read *during* out of "during and in relation to," that omission in truth appears to be tied to *Gibbs*, *Combs*, and the § 924(c)(1)(A) pattern instruction that followed.

That said, I am skeptical that *Gibbs* and *Combs* purported to authoritatively interpret the entire phrase "during and in relation to." As explained, in defining that phrase, *Gibbs* and *Combs*

- 19 -

relied on earlier decisions that interpreted the phrase "in relation to" alone. In requiring "that the firearm furthered the purpose or effect of the crime," *Gibbs* and *Combs* seemingly did not purport to define all aspects of the phrase "during and in relation to," but instead merely one of them. Nor could *Combs* in particular have fairly read that phrase in such narrow form. After all, doing so would have created a conflict with an earlier circuit precedent, *United States v. Layne*, 192 F.3d 556 (6th Cir. 1999). There, we held that a defendant did not "carry" a firearm "during" a drug trafficking crime because he carried it only "after the completion of the drug trafficking offense," rather than "'during' it." *Id.* at 571. To my knowledge, no case (including *Combs*) has ever overruled *Layne*'s straightforward reading of the term.

By all accounts, then, our Circuit's pattern instruction appears to be the product of "accidental law," that is, an instance where an earlier case (or cases) is read to stand for more than its holding. Those instructions seemingly understood *Gibbs* and *Combs*—which appear to have been providing a definition for "in relation to" only—as announcing a comprehensive definition for "during and in relation to." Viewed in that way, our pattern instruction, as has happened in other areas of law, seems to have developed by accident. *See, e.g.*, *Est. of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 492–96 (6th Cir. 2019) (Murphy, J., concurring) (explaining that courts have read a single sentence from one case out of context to adopt a theory of substantive due process); *Singh v. Rosen*, 984 F.3d 1142, 1152–53 (6th Cir. 2021) (explaining that our Court's interpretation of a statute "may have arisen by accident"); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 403–05 (2024) (Thomas, J., concurring) (explaining that the Supreme Court's associational standing jurisprudence may have developed by accident).

All of this said, the government might have been able to avoid the issue underlying Edwards's § 924(c)(1)(A)(iii) conviction. At first blush, at least, it appears the government could

have indicted Edwards for using and discharging a firearm "during and in relation to" his *conspiracy* to distribute heroin, which began in 2017 and ended in 2021. *See* R. 76, PageID 247; *see also* 21 U.S.C. §§ 841(a)(1), 846 (prohibiting any person from conspiring to distribute a controlled substance). After all, he shot Griffith's boyfriend in 2019 in an effort to retrieve heroin stolen from Edwards during a drug deal. That likely means Edwards used a firearm "during and in relation" to the conspiracy. As just explained, however, that was not how this case proceeded.

\* \* \* \* \*

At day's end, I agree Edwards's challenge to his § 924(c)(1)(A)(iii) conviction fails. Under the controlling instruction read to the jury, which was left unchallenged by Edwards, a rational trier of fact could have found that Edwards used his firearm in relation, or with respect, to his possession of heroin. And because the instruction was seemingly premised on governing case law, no plain error occurred. Whether the instruction properly described the elements of § 924(c)(1)(A)(iii) is debatable, perhaps even doubtful. A future case may allow us to harmonize the competing authorities at issue. But that is a matter for another day.